UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE STATE OF CONNECTICUT OFFICE OF<br>PROTECTION AND ADVOCACY FOR PERSONS<br>WITH DISABILITIES,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS A. KIRK, in his official<br>capacity as Commissioner of the State<br>Department of Mental Health and<br>Addiction Services; SUSAN GRAHAM, in<br>her official capacity as the<br>superintendent of Cedarcrest Hospital<br>of the State Department of Mental<br>Health and Addiction Services;<br>GARRELL MULLANEY, in his official<br>capacity as the Chief Executive<br>Officer of the Connecticut Valley<br>Hospital of the State Department of<br>Mental Health and Addiction Services;<br>and KENNETH MARCUS, in his official<br>capacity as Medical Director of the<br>State Department of Mental Health and<br>Addiction Services;<br><br>  Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   No. 3:02CV766(DJS)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

MEMORANDUM OF DECISION

On May 3, 2002, plaintiff the State of Connecticut Office of
Protection and Advocacy for Persons with Disabilities ("OPA")
brought this action pursuant to 42 U.S.C. § 1983 and the
Protection and Advocacy for Individuals with Mental Illness Act
of 1986, 42 U.S.C. §§ 10801-10827 ("PAMII"), seeking injunctive
and declaratory relief against Thomas Kirk, Susan Graham, Garrell
Mullaney, and Kenneth Marcus in their respective official

capacities as employees of the State of Connecticut Department of Mental Health and Addiction Services ("Department"). Plaintiff, citing the PAMII, petitions this court for an order requiring defendants to disclose certain records relating to the deaths of two former residents of facilities within the Department's control. Now pending are plaintiff's (dkt. # 22) and defendants' (dkt. # 25) motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, plaintiff's motion (dkt. # 22) is **GRANTED** and defendants' motion (dkt. # 25) is **DENIED.**

## I. FACTS

The parties do not dispute any fact material to the pertinent legal issues that are dispositive of the parties' claims. The following is a brief recitation of the necessary facts as set forth in the parties' Local Rule 56 statements.

Plaintiff is an agency created by the State of Connecticut pursuant to a federal mandate. As such, plaintiff investigates suspected incidents of abuse and neglect and pursues legal remedies on behalf of individuals with mental illnesses living under the care or control of the State of Connecticut. Commensurate with its duty to investigate, plaintiff seeks records generated and maintained by defendants concerning or related to the deaths of two former residents of defendants' facilities. On January 21, 2000, Ms. Rose Marie Cinami, who was

-2-

a 54-year old resident of Cedarcrest Hospital, choked while eating her breakfast and died.  On April 3, 2002, Mr. James Bell, who was a resident of the Whiting Forensic Division of the Connecticut Valley Hospital, died while being physically restrained.

There is no dispute that plaintiff is authorized to investigate these incidents.   Mr. Angelo Cinami, the administrator of Ms. Cinami's estate, executed a release to allow plaintiff access to records pertaining Ms. Cinami.  See 42 U.S.C. § 10805(a)(4)(A) (authorizing a P&A to have access to records of an individual whose representative has provided consent to do so).  Plaintiff was notified of the incident involving Mr. Bell by way of Section 46a-153 of the Connecticut General Statutes, which requires the commissioner of the responsible agency to notify plaintiff when a serious injury occurs due to the use of physical restraints.  See 42 U.S.C. § 10805(a)(1)(A) (authorizing a P&A to investigate and have access to records of an individual when there has been a report to the P&A).

Further, there is no dispute that defendants are the custodians of the records plaintiff seeks.  In response to plaintiff's requests, defendants have produced all records pertaining to the aforementioned deceased individuals, except so-called "peer review records."  Defendants state that the documents withheld from plaintiff

-3-

>reflect the proceedings of a peer review, i.e., the
>sequence of events or the course of action undertaken
>by a committee of Cedarcrest Hospital [and Connecticut
>Valley Hospital] established pursuant to written bylaws
>engaged in the evaluation by health care professionals
>of the quality and efficiency of services ordered or
>performed by other health care professionals.

(Dkt. # 26 ¶¶ 26 & 28).  Plaintiff initiated this lawsuit for the

purpose of obtaining an order from this court compelling

defendants to produce these peer review records.

## II.  DISCUSSION

By way of an action pursuant to 42 U.S.C. § 1983, and citing

the authority conferred upon it the Protection and Advocacy for

Individuals with Mental Illness Act of 1986, 42 U.S.C. §§ 10801-

10827 ("PAMII"), plaintiff seeks an order compelling defendants

to disclose documents defendants have classified as peer review

records.  Defendants contend that the court should not award

relief because the documents they have withheld are shielded from

disclosure by state statute.

### A.  STANDARD

A motion for summary judgment may be granted "if the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  Summary judgment is appropriate if, after

discovery, the nonmoving party "has failed to make a sufficient

-4-

showing on an essential element of [its] case with respect to
which [it] has the burden of proof." Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). "The burden is on the moving party 'to
demonstrate the absence of any material factual issue genuinely
in dispute.'" American Int'l Group, Inc. v. London Am. Int'l
Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v.
Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.
1975)). A dispute concerning a material fact is genuine "'if
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d
Cir. 1991). "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper." Id.

B. DEFINITION OF "RECORDS"

The dispositive issue in this lawsuit is the reconciliation
of the federal statute providing plaintiff the authority to
gather records to investigate potential abuse or neglect and the
state statute shielding peer review records from disclosure.
Plaintiff derives its authority to act from the following federal
statutory scheme. In response to the "inhumane and despicable
conditions" discovered at a New York institution for persons with

-5-

developmental disabilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. §§ 6041-6043 ("DDA"), to "protect the human civil rights of this vulnerable population."  Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d 1150, 1157 (N.D. Iowa 2001) (describing the genesis of DDA).  In order to receive federal funds under DDA, a state must have in effect a protection and advocacy system ("P&A").  42 U.S.C. § 6042(a)(1).[1] Plaintiff is Connecticut's protection and advocacy system.

In 1986, Congress passed the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), 42 U.S.C. §§ 10801-10827, as amended, after finding that individuals with mental illness are vulnerable to abuse, neglect, and serious injury, and that state systems for monitoring the rights of these individuals varied widely and were frequently inadequate.  42 U.S.C. § 10801(a).  Furthermore, Congress found that

> family members of individuals with mental illness play
> a crucial role in being advocates for the rights of
> individuals with mental illness where the individuals
> are minors, the individuals are legally competent and
> choose to involve the family members, and the
> individuals are legally incompetent and the legal
> guardians, conservators, or other legal representatives
> are members of the family.

Id.

_____

[1] In 2000, the DDA was repealed and replaced in its entirety by the Developmental Disabilities Act of 2000, Pub. L. 106-402, codified at 42 U.S.C. §§ 15001-15115.

PAMII was modeled after DDA, and was intended to "ensure that the rights of individuals with mental illness are protected, and to assist States to establish and operate a [P&A] for individuals with mental illness which will protect and advocate the rights of such individuals." 42 U.S.C. §§ 10801(b)(1) & 10801(b)(2)(A). PAMII specifically charges the state's P&A, which is an independent agency, with the duty to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10801(b)(2)(B); see also 42 U.S.C. § 10805(a)(1). In addition, the state's P&A is authorized to, inter alia, "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C. § 10805(a)(1)(B).

In order to carry out these objectives, PAMII provides the state's P&A with the authority to have access to "all records of . . . any individual," 42 U.S.C. § 10805(a)(4)(A)-(C), including

> reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A); see also Pennsylvania Prot. &

-7-

Advocacy, Inc. v. Houstoun, 228 F.3d 423, 426 & n.1 (3d Cir.
2000) (finding that the definition of "records" in § 10806 was
applicable to the term "records" in § 10805) (hereinafter
"Houstoun").   Any records obtained by the state's P&A pursuant
to PAMII are subject to the same federal or state confidentiality
regulations that are applicable to providers of mental health
services.   42 U.S.C. § 10806(a).   Plaintiff argues that this
provision requires the production of all records pertaining to
the two deceased individuals under defendants' care or control,
and that the provision does not allow for any applicable
exceptions.

        Defendants claim that they are prohibited from disclosing
certain records by Section 19a-17b of the Connecticut General
Statutes, which provides, in pertinent part, that

> [t]he proceedings of a medical review committee
> conducting a peer review shall not be subject to
> discovery or introduction into evidence in any civil
> action for or against a health care provider arising
> out of the matters which are subject to evaluation and
> review by such committee, and no person who was in
> attendance at a meeting of such committee shall be
> permitted or required to testify in any such civil
> action as to the content of such proceedings. . . .

Conn. Gen. Stat. § 19a-17b(d).   The term "peer review" is defined
as

> the procedure for evaluation by health care
> professionals of the quality and efficiency of services
> ordered or performed by other health care professionals,
> including practice analysis, inpatient hospital and
> extended care facility utilization review, medical
> audit, ambulatory care review and claims review.

Conn. Gen. Stat. § 19a-17b(a)(2).  As set forth by defendants,
and the Connecticut Hospital Association as amicus curiae,
Section 19a-17b promotes a candid and meaningful review of a
professional health care provider's conduct by other professional
health care providers by eliminating the potential for using the
opinions and thoughts expressed during these proceedings for
anything other than evaluation purposes.[2]

       Defendants ask the court to find that Congress, in enacting
the PAMII, did not intend to require disclosure of peer review
records to state P&As.  In support of this request, defendants
make three arguments.  First, defendants argue that Section
10805(a)(4) and Section 10806(b)(3)(A) are ambiguous with respect
to the disclosure of peer review records.  Second, they contend
that the court should interpret Section 10805(a)(4) and Section
10806(b)(3)(A) to distinguish between factual records, which
should be discoverable, and records that evaluate facts, which
should not be discoverable.  Third, defendants claim that their
proposed interpretation is the most faithful to Congress's
intentions, which they claim are expressed in the U.S. Senate and

_____

       [2] Plaintiff argues that Section 19a-17b does not apply to
this factual scenario because plaintiff is not attempting to use
the peer review records "in any civil action for or against a
health care provider," and therefore defendants have no basis in
law to withhold the materials at issue.  The court does not reach
this argument, however, because, as discussed herein, plaintiff's
motion may be granted on alternate grounds.

Committee on Labor and Human Resources report on 1991 amendments to the PAMII, which states that "[i]t is the committee's intent that the PAMII Act does not pre-empt State law regarding disclosure of peer review/medical review records relating to the proceedings of such committees," S. Rep. No. 102-114, 1991 WL 142023, at *5 (1991), see also H.R. Rep. 102-319, 1991 WL 240760, at *7 (1991) (same), and in regulations promulgated by the Department of Health and Human Services, which provide that "nothing in this section [describing the records subject to production to the state P&A] is intended to preempt State law protecting records produced by medical care evaluation or peer review committees," 42 C.F.R. § 51.41(c)(4).

   The U.S. Courts of Appeal for the Third and Tenth Circuits have rejected these arguments, and this court also does so for the same reasons.  This court, like the Courts of Appeal for the Third and Tenth Circuits, finds that the plain meaning of "all records of . . . any individual," 42 U.S.C. § 10805(a)(4)(A)-(C), and "reports prepared by . . . staff of a facility," 42 U.S.C. § 10806(b)(3)(A), is that P&As have been given access to peer review records.  See Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1270 (10th Cir. 2003); Houstoun, 228 F.3d at 427. Because the plain meaning of the statute is clear, there is no

need to turn to the legislative history for guidance,[3] and the interpretive regulation was promulgated in violation of the principles announced by the Supreme Court in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843-44 (1984).  As the Court of Appeals for the Third Circuit explained,

> As noted, PAMII requires that groups such as [the plaintiff P&A] be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not others. If Congress wished to achieve that result, it needed to enact different statutory language. It could not achieve that result, in the face of the statutory language it enacted, simply by inserting a passage in a committee report. Nor could that result be achieved by means of a regulation.

<u>Houstoun</u>, 228 F.3d at 427-28.

Defendants urge the court to read limiting language into Section 10806(3)(A) by interpreting the phrase "that describe

_____

[3] Defendants cite a case decided by the Supreme Court of New Hampshire in support of their contention that the federal statute should be interpreted in accord with the committee reports and interpretive regulation.  <u>See</u> <u>Disabilities Rights Center, Inc. v. Commissioner, New Hampshire Dept. of Corrections</u>, 732 A.2d 1021, 1024 (N.H. 1999).  The court in that case, however, considered sources of legislative intent apart from the plain language of the statute without holding that the statutory language was ambiguous, which is a course of action this court is not permitted to take.  <u>See</u> <u>Gemsco, Inc., v. Walling</u>, 324 U.S. 244, 260 (1945) ("The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.").

incidents of abuse, neglect, and injury occurring at such facility" to compel disclosure of only those "reports prepared by . . . staff of a facility," that relate facts.  Pursuant to this interpretation, peer review records would be considered *evaluations* of facts and not *descriptions* of facts, and therefore would not be subject to disclosure.

The statutory language at issue cannot be read as limiting access to records in the manner suggested.  First, when read broadly, the phrase defendants rely upon simply distinguishes between reports pertaining to the incident in question and reports that do not pertain to the incident.  Second, the definition of "describe" is "to represent or give an account of in words," Merriam-Webster's Collegiate Dictionary at 312 (10th ed. 2002); therefore, the plain meaning of the phrase upon which defendants rely encompasses any report that "give[s] an account of [the facts] in words."  Because peer review reports pertaining to the incident necessarily "give an account of [the facts] in words," peer review reports are subject to production.  The statutory language does not indicate that reports, or portions thereof, that evaluate the facts should be redacted or withheld from production.  Rather, the plain meaning is that any report discussing, recounting, or "describing" the facts of the incident must be produced.  The plain meaning of the word "describe" does not, in and of itself, support limiting what is otherwise general

-12-

and broad statutory language to preclude production of reports that contain evaluations of the facts of the incident.

Under the PAMII, a P&A's authority to seek records as provided in that Act expressly preempts any state law to the contrary by virtue of the Supremacy Clause of the United States Constitution:

> If the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness . . . [the section providing authority to access records] shall not apply to such system before the earlier of the date such system is no longer subject to such a prohibition, or May 23, 1988.

42 U.S.C. § 10806(b)(2)(C). Thus, after May 23, 1988, the federal scheme will apply regardless of the laws of the state. As such, defendants must disclose the records at issue in this case.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (dkt. # 22) is **GRANTED** and defendants' motion for summary judgment (dkt. # 25) is **DENIED**. Judgment for the plaintiff shall enter on all counts of the complaint. A declaratory judgment and injunction shall issue as follows:

> **Defendants, THOMAS A. KIRK, in his official capacity as Commissioner of the State Department of Mental Health and Addiction Services; SUSAN GRAHAM, in her official capacity as the superintendent of Cedarcrest Hospital of the State Department of Mental Health and Addiction Services; GARRELL MULLANEY, in his official capacity as the Chief Executive Officer of the Connecticut Valley Hospital of the State Department of Mental Health and**

-13-

Addiction Services; and KENNETH MARCUS, in his official capacity as Medical Director of the State Department of Mental Health and Addiction Services; violate the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. §§ 10801-10827, by:

1.    Denying the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities access to records, including peer review records, of Ms. Rose Marie Cinami and Mr. James Bell; and

2.    Preventing the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities from fully performing its statutory duty to investigate incidents of suspected abuse and neglect of persons with mental illness in violation of the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. §§ 10801-10827.

Therefore, defendants shall provide the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities with all reports, documents, and records of Ms. Rose Marie Cinami and Mr. James Bell, including peer review records, on or before March 11, 2005.

The Clerk of the Court shall close this file.

So ordered this 16th day of February, 2005.

/s/DJS
_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE

-14-